Good morning, your honors. My name is Jim Lobson's. Please the court I represent Mr. Potter, I'd like to reserve five minutes, but Mr. Potter along with about 27 other people living in vehicles was basically evicted from the city of Lacey. In the fall of 2019, when the city of Lacey was being evicted from the city of Lacey, the mayor of the city of Lacey said, if you don't move now and we hook up that tow truck, you're not going to get a second chance. He cannot live in Lacey. We may get into an argument about what living is, but for 16 hours a day, it is a crime for him to live in a vehicle in Lacey. Well, to live in a vehicle on a public street, right? It doesn't have any private property for anywhere publicly public street, public sidewalk, but I mean, he could find a landlord who would let him park his vehicle on private property, right? Theoretically, I mean, there are RV parks all over. But any house, any residential apartment that was willing to let him park, he could live there. True, your honor. I think there's a lot of information in the record that we put there about the cost of those places. He cannot afford any of those places that charge for people to put their trailer or camper on. He can't afford any of them. So let me ask you something. If Mr. Potter didn't have an RV, could he just go live on the streets of Lacey? He could sleep on the streets because the way their anti-camping ordinance is structured, he has to use or occupy camp facilities, which means he has to erect something, tent, or put a vehicle or shelter. But they could say, you can come back. It's no crime. You just have to sleep on the ground. That's what they're saying, essentially. Yes. You only challenged the parking ordinance. Is that right? No, that's not right, your honor. We charged the synergistic effect of all these laws together. The parking ordinance did not exist until September 12th. It was evicted on October, I think, 2nd. And the amendment of the anti-camping law, which retracted the anti-enforcement policy if you're homeless and there's no shelter space, was not changed until about four weeks after they had evicted the people. So they waited until they got them out. And then they said, it used to be we don't enforce this anti-camping law at all, 24 hours a day, 365 days a year. But as soon as they got the people out, they changed it. And they said, we now enforce it 16 hours a day and we don't enforce it at nighttime for nine hours. However, if you're in a vehicle, you can't be stationary for more than four hours. A large vehicle. Counsel, could I ask you an interjected question, please? Yes. If we conclude, if our panel concludes that the Washington State Supreme Court has never determined whether the state constitution protects a right to intrastate travel, either in the constitution or in any other state law. If we determine that, should the panel certify the question to the state Supreme Court, whether Washington law protects a right to intrastate travel? And the reason I ask is that if they answered that question, yes, I don't believe we'd have to reach any of the federal constitutional claims. I think you're largely right, Your Honor. I would largely agree. Although we looked into certification when we thought about at the beginning of briefing this appeal, and we didn't see any reason to ask you to certify it to the Washington Supreme Court because they have already determined that there is a right to intrastate freedom of migration and settlement. They determined it under the federal constitution. No, they determined it under both. Which case was that? And I cited the page of Machias where they say, they say, we think it violates the federal right. And then they say independently, article one, section 12, it also violates that. And that's an independent reason. And so you, you could certify it. But the way we read your cases, it said, don't move to certify if it's already clear. And it's already clear. Machias and Eggert, excuse me. Counsel, I think your friend disagrees with you and we'll hear from him as to whether the Washington courts have recognized this right. But there are two parts. Even if the Washington courts have recognized this right, there would be the question about whether this ordinance violated it, correct? Yes, but I mean, if the ordinance in Machias violated it, surely this one violates it. Why would this surely violate it? What about your, what about your client's travel is impeded? Is there any place your client can't go? It's residence, your honor. And if residence is penalized in any way, and in Machias, it was penalized by you don't qualify for workman's comp. That was it. That was the penalty. And they said it violated article one, section 12. And one thing I would like to point out, it's sort of going to both of your honors questions. I just want to point out that article one, section 12 is phrased in terms of the privileges and immunities of citizenship in Washington state. And it tracks the privileges and immunities clause of article four, section two, which is I think of some interest, at least it has been to the United States Supreme Court. Counsel, what understanding is your client parked his vehicle for five months in the city hall lot, right? Roughly, yes. So what if the statute, instead of four hours had been four months, you can't park your vehicle for more than four months in the same place. Would that violate the right to travel? I think it still would violate the right to reside. I won't call it that. I don't think the U.S. Supreme Court has really, they've made it pretty clear. We called it that in the beginning. In science, they says it has three components. They said one of them is this component to travel, like you're moving. One of them is the component to reside, and in Soto Lopez, and in science. What about if it was four years? You can't park your vehicle for more than four years in a parking lot or in a city street. Still a violation? It's still saying you can't live here. And if they're saying, yes, if they're saying you can't live here for more than four years and then you have to get out. They're saying you can't park your car or your vehicle on the street anywhere for more than four years at a time. That would violate it? I think so, if you're homeless. And that's because I'm consistently coming back to live, Your Honor, because that's what I think it is. If I could, there's two cases where there's some small little, well, not so small things where they refer to the Cole case and the King case. One of them is the U.S. Supreme Court's decision in Memorial Hospital, and the other is the Washington Supreme Court's decision in State v. Egger. In Memorial Hospital, where we have a man who's moved from New Mexico to Arizona, they said, they cited in a footnote, they said, we recognize the right to migrate, to settle, to live somewhere. And in a footnote eight, they cited Cole and King, the first and second circuit cases, which hold that that right, that federal right includes protection, intrastate residence choice. And that could be just coincidence, but I don't think so. In Eggert, the Washington Supreme Court also cited those two cases. Counsel, I want to briefly, before you get into your rebuttal time, I want to briefly ask you a question on the Fourth Amendment issue. The way I read your brief, particularly at page 48, it suggests that without an extra reason for towing a vehicle, like a specific, in that circumstance, impeding safety, that you can never tow a vehicle for overstaying parking. That seems to be what you're saying at page 48. Is that your position? No, that's not correct, Your Honor. So when can you overstay, under the Fourth Amendment, you overstay the city of Lacey's or the city of Los Angeles's parking ordinance? You're not impeding public safety, but your meter has run out. Under what circumstances can you tow that? Your Honor, the reason I didn't agree with the way you phrased it is because you phrased it as a facial question. I would say you can't if they're homeless. If they're not homeless, if they're living in their vehicle, they have no other shelter, and then I would say it's constitutionally unreasonable in violation of the Fourth Amendment. So you can tow the car of people who have a house, but you can't tow the car of someone who is living in the vehicle no matter what? I didn't say no matter what, Your Honor. If it's not impeding public safety, if it's just overstaying under the Fourth Amendment, you can't tow it. Right. What I will say in my last 50 seconds before I get into my rebuttal time here is I cited the Winston v. Lee case where they basically had a probable cause shown. We can get evidence by doing this surgery, but the court said, we don't care. It's not reasonable. And that's the ultimate touchstone of the Fourth Amendment, always is reasonableness. Here they didn't have either. And it wasn't reasonable in Winston to go searching for this bullet inside this man's body because there were some health risks. And what I would emphasize here is people die of hypothermia all the time who are homeless because they're sleeping on the ground in the winter, in the wet, in the rain. They die. There are health risks to this. Mr. Potter is not a healthy man. He gets his medical care, or he did anyway, in Lacey. I don't think it's constitutionally reasonable to tell a homeless man, stop sleeping in your vehicle. But you can come back here and sleep on the ground if you want to run the risk of dying. I will keep the rest of my time for rebuttal. All right. Thank you, counsel. Mr. Justice. Good morning. My name is john justice I represent and may please the court. I represent the city of Lacey. The appellee in here. As this court has alluded to and it's questioning Mr Potter in this case. seeks a right protected by the Constitution to park a vehicle anywhere on a city street or a city on parking lot for as long as he would like without restriction. The district court correctly rejected the constitutional challenges to the, to the Lacey parking ordinance because the Constitution is not provide for such a right, nor has any case interpreting the Constitution, Constitution, identified that that is a right, protected by the Constitution. Lacey ordinance 1551, which was passed by the Lacey city council on September 12 2019. For the first time, the city started to regulate its parking, because it was obviously addressing issues that cities address as they grow that ordinance authorized placement of signs that prohibited or time limited parking on city streets. Alleys rights away and parking lots. Mr Potter is the court has already identified was parking his RV in the city hall parking lot for approximately five months before the passage of this ordinance. After passage of the ordinance Mr Potter was told he could no longer park his RV in the Lacey city hall parking lot. When he refused to move it he was given a civil fine of $35. And after that Mr Potter moved his RV from the city hall parking. Mr Potter's RV was never seized. It was never impounded. And the only penalty that he suffered was the $35 civil fine. Mr Potter. Mr Potter, so council has indicated that he is challenging the camping ordinance, I would note that that ordinance was challenged on summary judgment by the city in the trial court. Mr Potter did not oppose that motion, and the district court did not further address it because Mr Potter did not oppose summary judgment of that challenge. The only challenge properly before this court is to the city's parking ordinance. As to the constitutional challenges that Mr Potter raised the Fourth Amendment claim. The RV was never seized. And so Mr Potter is the district court noted had to sustain a facial challenge to under the Fourth Amendment that required Mr Potter to establish that the seizure of a vehicle in all circumstances would be unconstitutional under the ordinance. Question about, about that, the Fourth Amendment. Isn't it true that the caretaker community caretaker exception requires is showing that there's a jeopardy to public safety, or to the efficient movement of vehicular traffic in order to come within that exception. That is correct. So how does that apply in the nighttime hours in the city hall parking lot. Well there's there's there's two ordinances that would come into play there, there's the anti camping ordinance, which would not be enforceable during those hours if there was not sufficient shelter space. So, as to the camping ordinance that would not be that would not come into play. Okay, that would not be enforceable because we can all agree that the city of Lacey does not have sufficient homeless shelter space. Right. I don't think that's a. It's a in the record but I would assume for purposes of your question that that would be true. Okay, so the other ordinance that would come into place the four hour ordinance. And that's why I asked nighttime parking. How, how does, how did those two factors, you know the safety of other people and I assume the parking lot is empty at night, right. Well, that's, again, not necessarily clear depending on how many people other people were similarly taking advantage of that space. Along with Mr. Potter. The parking ordinance would authorize if there was a violation in $35 civil fine, whether or not the vehicle could be impounded under the Fourth Amendment would again be subject to whether or not it was complied with the Fourth Amendment. If it didn't. And Mr. Potter would have a claim under the Fourth Amendment that it violated his rights that never happened. And so, it was never impounded so you're saying there's he doesn't have an as applied claim but he does have a facial claim right. Correct. And the way that is analyzed and is that Mr Potter needs to show that this ordinance violates the Fourth Amendment in any application. And that is where the court the district court noted that no in a community caretaking exception, a government can seize a vehicle. So this this ordinance does not permit something. Maybe the government could seize the vehicle under the second prong efficient moving of vehicular traffic during the day when there was other vehicular traffic but I guess, and you're saying since that one would be legal. The nighttime one is facially valid as well. The ordinance is facially valid, whether or not a particular seizure under the ordinance was constitutional would depend on the facts of that particular seizure. He would have to go test this ordinance. Correct your honor, there would have to be an actual seizure, and then, then you would be looking at an as applied challenge under the as to that particular seizure. Did it comply with the Fourth Amendment. Because that wasn't the case here. Mr Potter cannot sustain a as applied challenge because his vehicle was never seized. And so I would ask you to address your friends argument that the Washington Supreme Court has already recognized a Washington State constitutional right to intrastate travel. The cases that Mr. statute in that case denied seasonal farm workers, workers compensation benefits. The court held that that statute violated the federal right to interstate travel, and just merely noted that the state constitution supported the holding but it did not did not complete a gunwale analysis to determine whether or not the state constitution independently created a right to intrastate travel in the highest case. Similarly, in the case, there was a preference in that case for individuals that resided in the city. The court in that in the case relied exclusively on federal authority and endorsing a right to intrastate as well as inter interstate travel. So I don't, I do disagree with Mr. position on that that the Washington State Supreme Court has recognized a right to intrastate travel, particularly in a situation such as this where we're not dealing with a preference statute or a complete exclusion of a person to move through an area, rather than simply, as it is in this case, Mr. Potter's right to move to the city of Lacey is not restricted or impeded in any way. Council them given your position. Do you think that that our court should certify the question to the state Supreme Court, whether there's a right to intrastate travel under state law. I don't believe so, Your Honor, and the reason is that even the cases from other circuits that have implicitly recognized a right to intrastate travel have done so on facts that are not even remotely close to this case facts where there's again a preference to existing residents over newcomers, or a exclusionary zone such as a. If you've been convicted of a certain offense you cannot enter a certain area of the city at any point in time during the day or night. Those are the cases in which courts have created or recognize this right. Doesn't this novel fact pattern. I mean, I'll take more in favor of sending it to the state court, the state court could then tell us do you, whether or not it recognizes a right to intrastate travel, and whether banishing someone from the city like this violates that right. Well, I think the court has addressed at least part of this factual pattern in the long case. In that case, individual living in his RV. The RV was told invite because it was parked in violation of the city of Seattle parking regulation. In that case did not endorse the right to Mr Potter seeks in this case. So I think the court has had an opportunity. In that case, if it found that there was such a right to endorse one. I think this, this set of facts is not in this case does not constitute a banishment does not constitute any burden to intrastate travel that has been recognized in any case across the country. Mr Potter is free to move through the city of Lacey is free to live in the city of Lacey, the parking ordinance that issue simply regulates the parking of vehicles doesn't regulate where humans can be. So is there anything in the record as to whether or not there are private facilities that could rent space to someone to park an RV in Lacey. The only, the only part of the record that relates to that, Your Honor is Mr Potter's own declaration at the district court level where he talks about local RV parks charging in the neighborhood of four to $500 a month. He's on $1,000 approximately $1,000 a month disability payment so does Lacey have any reason to question that there are already parks within Lacey. Oh, there undoubtedly are RV parks within Lacey. So, so that. And as Lacey have any reason to question that these RV parks would be able to take the RV, if could afford the $500 a month. There's absolutely no reason to doubt that nothing in the record that would suggest he could not park his RV in an RV lot within the city of Lacey. Is there anything in the statutes that would prevent the plaintiff from residing on the streets in a smaller vehicle in the streets or a parking lot Is there anything that would require towing if it wasn't an RV if it was, if it was some smaller motor vehicle. The parking ordinance applies to commercial vehicles farm vehicles or larger vehicles. It does not appear in the ordinance to apply to, for example, passenger size vehicle, or the way I read the vehicle, the ordinance, something that was smaller than an RV, but larger than a regular passenger vehicle. I don't see that covered by the ordinance. I'm sorry. No, I was gonna say but correct me if I'm wrong, please. I would, I would not disagree with the court on that. As to the other challenges. The court rejected the eighth amendment challenge the district court did under the cruel and unusual punishments clause. Mr Potter has not cited any case that has found a $35 fine for a parking violation to be either cruel and unusual punishment or excessive and excessive fine under the eighth amendment. Is Mr Potter eligible for the to apply for the temporary parking permit. He would be your honor. There's nothing that would prohibit him from applying. Mr Potter admittedly did not apply and indicated that he did not plan to apply. But there's nothing in there that would automatically exclude Mr Potter from. Is he eligible for such a permit. He would be eligible to apply whether or not he would receive it or not would depend on my question is not whether I suppose anybody can apply but with Mr. Potter be eligible to receive it. Again, your honor, I don't mean to be dodging the answer just it would because there are certain requirements to be met the reading of the record is that he's not so if you think he is given his past criminal history. I think that would be taken into consideration but again if he's in, if he's seeking services it's not an automatic denial, it is a something that the city would take into consideration and evaluating his application, but it never got a chance to do that. May I may I conclude briefly. I just have one other question what's what happened to the safe lots that the city plan to provide in the course of debating the creation of such a lot. And whether or not how the cost would be covered. That has not not occurred yet. The city, the governments of Thurston County, Lacey City, Lacey Olympian Tumwater and Thurston County are struggling with locating that and funding. So that is still something that is in process. Very briefly, your honors. Mr Potter the right he seeks in this case to park a vehicle anywhere he chooses in on a city street or city on parking lot is unprecedented. It's not supported by any constitutional provision, or any case interpreting the Constitution, and the city of Lacey would respectfully request that this court, affirm the district court summary judgment in all respects. Thank you. Thank you, counsel. Mr love sense. If I can squeeze in six points. First of all, as to what Washington Supreme Court precedent is on page 275 of the matias decision it says our state constitution privileges and immunities clause article one section 12 independently supports our conclusion that this provision denies the appellants equal protection of law. Later in the eggert case on page 841 the Washington Supreme Court said the right to travel as a right applicable to intrastate as well as interstate commerce in the eggert case, the Washington Supreme Court said that if we do not settle the Declaration of Independence is the king won't let us settle those parts of Virginia on the west side of the Appalachian Mountains. They thought that was outrageous. It was one of the things they put in the Declaration of Independence. I wanted to point out one of the sort of silly results of sort of saying this, this right would only apply to interstate transfer migration. If Mr Potter had kept going on October 2 and driven all the way to Oregon and crossed the river and spent six months, sorry six weeks at some like at the San Diem rest station on I-5 living there, he'd have become a resident of Oregon. Then he'd be a resident of Oregon who wanted to move back to Washington. If he wanted to move back to Lacey where he'd lived for 23 years, that would be interstate travel and it would clearly be barred and the memorial hospital case would be directly on point. As far as the seizure goes and saying that he has to go back and test it out and see if his home gets seized, I cited the Thompson case from the U.S. Supreme Court as well as some Ninth Circuit cases that said you don't have to risk your home, the exact words of the U.S. Supreme Court where you don't have to risk the farm. In those cases, a man was threatened with you'll lose your farm if you try to sell it to a man of Asian ethnicity. He challenged it without trying to sell it. They said he didn't have to bet the farm. That's U.S. Supreme Court law. I don't believe that counsel has accurately stated what the record shows in this case and I heard him say the record except for what Mr. Potter has to say. What Mr. Potter has to say is evidence. They didn't present any evidence in summary judgment, not in support of their summary judgment motion, not against our summary judgment motion. They presented none. It is undisputed in this case what Mr. Potter says, which I cannot afford to put my, I don't have the money to put my home in those lots where they rent you a space to park. If he goes back and they do seize his vehicle, it is also undisputed and it's in the record that he will lose it basically forever because instantly the costs start piling up. I know this from the long case. I was counsel in the long case. I don't think the long case was accurately represented to you either. The long case, we did not raise any claim of right to travel or right to live somewhere. The long case, the statute that was at issue was a 72-hour law. Perhaps, I know you're wondering, in Seattle, they said if you move it a block, it's okay. If you move it a block. There was no such issue in the long case. Statewide in Washington, pursuant to a statute which is in Title 46, Chapter 55, if you can't pay the costs which pile up to redeem your car within 15 days, they sell it at public auction. Almost everyone that lives in a vehicle and who's had their home towed loses it forever because of that statute. They lose it and everything in it. I'm representing a woman right now who that happened to her. It didn't happen to Mr. Long because he had the incredible good fortune to contact a lawyer within those 15 days who told him what to go and say. He got it back before the 15 days on an installment plan which the Washington Supreme Court held violated the excessive fines clause of the Eighth Amendment. Finally, it was represented to you that the record doesn't contain any of this stuff about the cost of housing. It supposedly only contains Mr. Potter's declaration. Kerry Graff's declaration has attached to it pages and pages and pages of data about the affordability of housing in Lacey, including all this data. It's not true that the record doesn't contain that, Your Honor. Right. Thank you very much Council Potter versus city of Lacey will be submitted.
judges: WARDLAW, GOULD, BENNETT